**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zurich American Insurance Company,<br><br>                    Plaintiff,<br><br>vs.<br><br>Magellan Health, Inc.,<br><br>                    Defendant. | No. CV-21-00899-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Magellan Health, Inc.'s Motion to Dismiss, Stay, or Transfer Venue to the United States District Court for the Eastern District of New York (Doc. 19), pursuant to 28 U.S.C. § 1404 and the Federal Rules of Civil Procedure ("FRCP"). For the reasons that follow, the Motion to Transfer will be granted.[1]

**I.      BACKGROUND**

Plaintiff Zurich American Insurance Company ("Zurich") is an insurance company incorporated in New York. (Doc. 1 at 2). Zurich has an office in New York and another in Illinois; the latter is Zurich's principal place of business. (*Id.* at 2). Defendant Magellan Health, Inc. ("Magellan") is a Delaware corporation with its principal place of business is in Arizona. (*Id.* at 2).

Zurich issued Commercial Crime Policy number FID 9037497-13 (the "Policy") to Magellan for the period from April 20, 2020 to April 20, 2021. (Doc. 19 at 34). The Policy

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

covered, among other things, losses or damages resulting from computer fraud. (*Id.* at 37). In May 2020, Magellan discovered that four New York City pharmacies "submitted fictitious prescription claims" that triggered automatic payments to the pharmacies. (Doc. 1 at 4). The fraud resulted in significant losses for Magellan and two of its subsidiaries, Magellan Rx Management, LLC ("Magellan Rx") and Merit Health Insurance Company ("Merit Health")—both of which are non-parties to this action. (*Id.* at 5).

In July 2020, Magellan's New York broker submitted a claim under the Policy's Computer Fraud Insuring Agreement for an alleged loss of $6,646,000 because of the fraud. (*Id.*). In November 2020, Zurich notified Magellan that the Computer Fraud Insuring Agreement did not cover the fraud incident and denied the claim. (*Id.* at 5–6). In February 2021, Magellan asked Zurich to reconsider the denial. (*Id.* at 6). In March 2021, Zurich issued its second denial of the claim. (*Id.*).

Zurich brought this claim on May 20, 2021, seeking declaratory judgment as to the non-application of the Policy to losses arising from the fraud incident. (*Id.*). Zurich asks that this Court "declare that there is no coverage under the Policy and/or the Computer Fraud Insuring Agreement of the Policy for Magellan's Claim." (*Id.* at 6–7).

One week later, Magellan, Magellan Rx, and Merit Health filed a separate action against Zurich in the Eastern District of New York. (Doc. 19 at 96). The action asserts that Zurich's denial of coverage amounts to a breach of contract and a breach of Zurich's duty of good faith. (*Id.* at 104–06). The action seeks damages and declaratory relief. (*Id.*).

In the Arizona action, Magellan has now filed this Motion to Dismiss, Stay, or Transfer. (Doc. 19). Magellan argues first that this case should be transferred to the Eastern District of New York because "such relief is warranted under 28 U.S.C. § 1404 for the convenience of the parties and witnesses, and in the interest of justice." (Doc. 19 at 2). Alternatively, Magellan seeks dismissal under FRCP 12(b)(7) for Zurich's failure to join necessary and indispensable parties. (Doc. 19 at 16).

## II. <u>STANDARD OF REVIEW</u>

Section 1404(a) of the Judicial Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). To transfer a case under § 1404(a), two requirements must be met. First, the transferee court "must be a place where the action originally might have been brought." *Leyvas v. Bezy*, No. CV 07-1032-PHX-SMM, 2008 WL 2026276, at *2 (D. Ariz. May 9, 2008) (internal quotations omitted) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985)). Second, "the convenience of parties and witnesses, in the interest of justice, must favor transfer." *Id.* (internal quotations omitted).

In determining whether a transfer would be more convenient and serve the interests of justice, the Ninth Circuit has provided a list of factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). This list of factors is non-exhaustive, and courts have also considered (9) "the pendency of related litigation in the proposed transferee forum" and (10) "the feasibility of consolidation with other claims" in the analysis. *E.g.*, *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2021 WL 3290532, at *2 (D. Ariz. Aug. 2, 2021); *Pierucci v. Homes.com Inc.*, No. CV-20-08048-PCT-DWL, 2020 WL 5439534, at *3 (D. Ariz. Sept. 10, 2020); *Taylor v. Republic Services, Inc.*, No. CV16-02760-PHX DGC, 2016 WL 6833943, at *3 (D. Ariz. Nov. 21, 2016). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *ThermoLife*, 2021 WL 3290532, at *2 (citation omitted). "The burden of establishing that an action should be transferred is on the moving party." *Id.* (citation omitted).

### III.   DISCUSSION

This Court will now examine whether Magellan's proposed transfer is appropriate under § 1404(a). It is clear this action could have been brought in the Eastern District of

New York originally.[2] Therefore, this transfer analysis focuses on the factors of convenience and efficient administration of justice. Because this Court finds in favor of Magellan's Motion to Transfer, it is unnecessary to address Magellan's Motion to Dismiss for Failure to Join Necessary and Indispensable Parties under FRCP 12(b)(7).

**A. Transfer to the Eastern District of New York is proper.**

The first factor—the location where the relevant agreements were negotiated and executed—weighs in favor of transfer but is accorded less weight. Here, Zurich's primary argument is that the Policy, in denoting Magellan as the "Policyholder," listed Magellan's Arizona address as being the Policyholder address. (Doc. 24 at 6). Zurich then claims that the Policy was executed in Illinois "for delivery to Magellan in Arizona at its principal place of business." (*Id.*). In essence, Zurich argues that because Magellan's Arizona address was the address listed on the Policy, the Policy was, at least in part, negotiated and executed in Arizona.

Magellan responds that Zurich "evades entirely" the fact that the Policy was actually delivered to New York, regardless of the address on the Policy. (Doc. 29 at 3, n.3). Indeed, the record indicates that the Policy was delivered to Magellan's New York-based insurance broker, either instead of or in addition to Magellan's Arizona address. (Doc. 19 at 25). Magellan notes other aspects of the Policy's negotiation and execution that show connections to New York, but not to Arizona. For example, in addition to receiving delivery of the executed Policy, the New York broker also allegedly negotiated the Policy on Magellan's behalf. (Doc. 19 at 8–9, 25). And though allegedly executed in Illinois, the Policy appears to have been issued by Zurich's New York office because it is Zurich's New York address listed on the Policy. (Doc. 19 at 33). All told, this Court finds that the Policy at issue was negotiated and executed outside of Arizona. Thus, the first factor weighs in favor of transfer. However, because this cause of action concerns the interpretation of the Policy's coverage clauses—and not the Policy's formation—this factor carries less weight

---

[2] Magellan notes that the Eastern District of New York would have had diversity jurisdiction, had this case been brought there. (Doc. 19 at 7–8). Zurich does not dispute this. (*See* Doc. 24).

in the transfer analysis.

The second factor—the transferee court's familiarity with the governing law—may weigh against transfer, depending on the outcome of the choice of law analysis. This factor reflects the presumption that federal courts know more about the substantive law of their home states. *Grabham v. American Airlines Inc.*, No. CV-17-03741-PHX-DWL, 2019 WL 316213, at *4 (D. Ariz. Jan. 24, 2019) (citation omitted). Ordinarily, a federal court "applies the choice-of-law rules of the state in which it sits." *Consul Ltd. v. Solide Ents., Inc.*, 802 F.2d 1143, 1146 (9th Cir. 1986). But when a case is transferred under § 1404(a), the transferee court "must apply the choice-of-law rules of the state from which the case was transferred." *Id.*

Thus, if this case were transferred, the Eastern District of New York would have to apply Arizona's choice-of-law rules. Arizona follows the Restatement's "most significant relationship" test. *Labertew v. Chartis Prop. Cas. Co.*, 363 F.Supp.3d 1031, 1036 (D. Ariz. 2019). The parties disagree as to how the choice-of-law analysis unfolds. Magellan argues that the most significant relationship test results in application of New York law to the interpretation of the Policy's coverage. (Doc. 19 at 9–10). Zurich cites to legal authority indicating that the state where the policyholder maintains its principal place of business—here, Arizona—is the state with the "most significant contacts" to the insurance policy, and that therefore Arizona law will apply. (Doc. 24 at 18, n.11). Setting aside the choice-of-law analysis, this Court recognizes that "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 67 (2013). There is no indication that the contract interpretation issues presented by this case are particularly vexing or novel. Thus, even if the New York court must apply Arizona law to interpret the insurance contract, this factor weighs only slightly against transfer.

The third factor—the plaintiff's choice of forum—weighs against transfer but is accorded very little weight. Although the plaintiff's choice of forum is usually given great deference where the plaintiff has chosen her home state, this factor carries less weight where the chosen forum is not the plaintiff's home state, and carries even less weight where

the parties' contacts with the chosen forum are limited. *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

Here, Zurich is incorporated and licensed to do business in New York. (Doc. 1 at 2). Zurich's principal place of business is in Illinois. (*Id.*). There is no evidence in the record that Zurich has any offices in Arizona. Thus, the fact that Zurich chose Arizona as the forum carries less weight because Arizona is not Zurich's home state. Further, as discussed below, the parties contacts with Arizona are limited. The only connections to Arizona come from the facts that it is Magellan's principal place of business and that Magellan's Arizona address is indicated as the Policyholder's address on the Policy. (Doc. 1 at 2; Doc. 19 at 33). But there are no Magellan executives—or employees, for that matter—in Arizona who are involved in this matter. (Doc. 19 at 25). And while Magellan's Arizona address is on the Policy, the record indicates that all other operative facts related to the policy—including the parties' communications with respect to it—trace to states other than Arizona. Thus, with such limited Arizona contacts, Zurich's choice of Arizona as the forum carries even less weight in the transfer analysis.

The fourth and fifth factors—the parties' and this specific cause of action's contacts with the forum—weigh in favor of transfer. To start, Zurich has no contacts with Arizona. Again, Zurich is a New York corporation with offices in New York and Illinois. (Doc. 1 at 2). While it is unknown what business Zurich conducts in Arizona, the record does not indicate any offices or permanent presence of Zurich in the state. Magellan, on the other hand, has stronger Arizona ties. Magellan's principal place of business is in Scottsdale, Arizona (Doc. 1 at 2) and, as noted, Magellan's Arizona address is the address listed on the Policy. (Doc. 19 at 33). Even so, the record indicates that Magellan and the other non-party insureds, Merit Health and Magellan Rx, conduct business in other states, particularly in New York. (Doc. 19 at 8, 98).

As it relates to this cause of action, the contacts with Arizona are almost nonexistent. The Policy was negotiated outside of Arizona (by the New York broker and Zurich), issued

6

from Zurich's New York office, and delivered to the New York broker on behalf of Magellan. (Doc. 19 at 25). While the Policy does include an amendment that Zurich asserts "conforms the Policy to Arizona law regarding cancellation and non-renewal of the Policy," the only other language in the Policy referencing Arizona is the Policyholder address. (Doc. 24 at 6; Doc. 19 at 33). Notably, the fraud underlying Magellan's coverage claim arose from Magellan's business in New York, and it was the New York broker who submitted the claim for coverage on Magellan's behalf. (Doc. 1 at 4–5). All communications concerning the coverage claim and Zurich's denial of it were between persons outside of Arizona. For example, Zurich addressed its original denial letter to Denise G. Steed, the Vice President of Risk and Insurance Management for Magellan. (Doc. 19 at 78). While Ms. Steed apparently works in Georgia, the letter was sent to Magellan's Missouri office. (Doc. 19 at 24, 78). The New York broker was copied on the letter. (Doc. 19 at 24). James A. Knox, Zurich's claims counsel, sent the letter on Zurich's behalf; Knox asserts that he handled the claim from his office in Texas. (Doc. 24-1 at 1). Later correspondence related to the claim—non-party Magellan Rx's request for reconsideration and Zurich's second denial letter—was between Knox and Magellan Rx's Maryland office. (Doc. 19 at 85, 91).

All told, this cause of action has only one significant contact with Arizona: Magellan's principal place of business is in Arizona and that address is listed on the Policy. This Arizona connection is outweighed by this cause of action's contacts with other states, specifically New York. Thus, factors four and five weigh in favor of transfer.

The sixth factor—dealing with the costs of litigation—weighs in favor of transfer. The witnesses and evidence in this case are not located in Arizona. Normally, this would mean increased litigation costs. However, as further described below, the location of witnesses and evidence in this case may not make a transfer to New York significantly more convenient. Likewise, their location outside of Arizona does not make Arizona a significantly more costly forum than New York. Instead, it is the existence of a pending, more comprehensive case between these parties in the Eastern District of New York that tilts the cost-of-litigation factor in favor of transfer. The New York action involves the

7

same parties, the same underlying event, and will address the coverage issue. (Doc. 19 at 96). And given its additional parties and claims, the New York action is also more comprehensive, making consolidation of these actions in New York—rather than keeping them separate or consolidating them in Arizona—the most natural solution. This would eliminate duplicative litigation and reduce expenses for the court system and for the parties involved. Finally, there is no evidence that Zurich or Magellan would be financially impaired if this cause of action were litigated in New York. Magellan already conducts substantial business in New York, while Zurich has an office in New York and presumably has experience litigating there. The costs-of-litigation factor weighs in favor of transfer.

The seventh and eighth factors—dealing with the location of witnesses and evidence—are relatively neutral. As to evidence, the parties agree that the documentary evidence in this case is expected to be minimal and available electronically. (Doc. 19 at 12; Doc. 24 at 16–17). Thus, even though all documentary evidence is likely located outside of Arizona, this factor remains neutral in the transfer analysis. As to witnesses, it is true that all relevant party witnesses appear to reside outside of Arizona. As already noted, Zurich does not have an Arizona office and any Magellan executives involved in this action are not from Magellan's Arizona office. (Doc. 19 at 25). Specifically, Ms. Steed and Mr. Knox—two of the individuals who corresponded on behalf of the parties with respect to the denial—reside in Georgia and Texas, respectively. (Doc. 19 at 24; Doc. 24-1 at 1). The same is true for non-party witnesses. Magellan's insurance broker resides in New York. (Doc. 19 at 24). And while Merit Health and Magellan Rx[3] have principal places of business in Arizona, both can trace their involvement in this case to the business they conduct in New York.

However, Zurich argues that the witness location factor should be entitled little weight because: (1) the nature of this action requires limited witness participation and (2) the witnesses do not reside in New York either, meaning a transfer does not necessarily

---

[3] The Court notes that the parties appear to dispute Magellan Rx's principal place of business.

make New York a more convenient transfer for witnesses. (Doc. 24 at 17). This Court agrees with Zurich's arguments. First, this action relates to interpretation of the Policy's coverage. Such interpretation of an insurance contract "is a question of law" for the Court. *Univ. Mech. Contractors of Ariz., Inc. v. Puritan Ins. Co.*, 150 Ariz. 299, 301 (1986). The parties agree that discovery on this question is likely to be minimal, and Zurich asserts that "only a few witnesses may be necessary to resolve this coverage dispute, and that this coverage action likely can be resolved on motion." (Doc. 24 at 17). Magellan does not dispute this. (*See* Doc. 29). Second, while this action has extensive contacts with New York, its witnesses reside in several states, not just New York. As to these witnesses, transfer "merely shift[s] rather than eliminate[s] the inconvenience." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.Supp.2d 1183, 1195 (S.D. Cal. 2007) ("Transfer is inappropriate where it 'would merely shift rather than eliminate the inconvenience.'") (quoting *Decker Coal*, 805 F.2d at 843)). As a result, the location-of-witnesses factor weighs neutrally in this transfer analysis.

The ninth and tenth factors—the pendency of related litigation in the transferee forum and the feasibility of consolidation with other claims—weigh heavily in favor of transfer and are the decisive factors in this analysis. "As a general rule, cases should be transferred to districts where related actions are pending." *Impra, Inc. v. Quinton Instruments Co.*, No. CIV-90-0383 PHX WPC, 1990 WL 284713, at *2 (D. Ariz. June 26, 1990). "The reason for this rule stems from the expectation that consolidation of related actions will occur in the transferee district, thus promoting judicial and litigant economy." *Waller v. Burlington N. R.R. Co.*, 650 F.Supp. 988, 991 (N.D. Ill. 1987); *see also Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256, 1262 (W.D. Wash. 2005) ("Transfer will also promote judicial economy in that it will facilitate consolidation and settlement."). Ultimately, consolidation of these actions is for the transferee court to decide, but "the feasibility of such consolidation is a factor that this Court may consider in deciding to allow a transfer." *Amazon.com*, 404 F.Supp.2d at 1262 (citation omitted). And even absent consolidation, transfer can "allow a global settlement of the related cases." *Id.*

Here, the Arizona and New York actions are clearly related; the Arizona action is a

smaller piece of the more comprehensive action in New York. One week after Zurich filed this Arizona action, Magellan, Magellan Rx, and Merit Health sued Zurich in New York, seeking declaratory relief and damages for Zurich's alleged breach of contract and breach of good faith. (Doc. 19 at 96). The New York action involves the same coverage dispute under the same Policy but includes as parties Magellan Rx and Merit Health—the two non-parties who Magellan argues are "necessary and indispensable" in this Motion. (*Id.*). Even assuming Magellan Rx and Merit Health are not "necessary and indispensable" for this Arizona case, the two companies were affected by the fraud and by Zurich's denial of coverage. (*Id.*). At the least, Magellan Rx and Merit Health are intimately involved in this cause of action. Additionally, the claims involved in the New York action capture a wider scope of what transpired between the parties. While this Arizona action addresses only the narrow issue of Policy interpretation, the New York action encompasses not only the interpretation issue, but also questions of breach of contract, bad faith, and alleged misconduct by Zurich in its claims investigation. (*Id.* at 104–06).

While different in scope, these two actions are obviously intertwined. Yet, absent transfer, they remain in separate courts, on opposite sides of the country. To keep these cases separate creates "duplicative litigation, unnecessary expense, a waste of judicial resources, and inconvenience to witnesses and litigants." *Waller*, 650 F.Supp. 988 at 991. It also creates a risk of conflicting judgments and prevents consolidation of the actions. Transfer is the obvious solution.

The question, then, is whether the actions should be litigated in Arizona or New York. Only two factors weigh in favor of keeping the case in this Court: familiarity with governing law and the plaintiff's choice of forum. These are significantly outweighed by the factors which favor transfer: the parties' and this cause of action's significant contacts with New York as compared to Arizona; the costs of litigation that are saved by transferring this action; the existence of a pending, more comprehensive New York action; and the feasibility of consolidation between the two actions, given their similar issues and parties involved. And given that this Arizona action is one part of the larger New York action—and not the other way around—a transfer of this case to New York better accommodates

the judicial system as a whole.[4]

## IV. CONCLUSION

This Court finds that the Eastern District of New York is a more convenient forum for this action and that a transfer to that court better promotes the interest of justice by preserving judicial resources, preventing costly and duplicative litigation, and facilitating consolidation and settlement.

Accordingly,

**IT IS ORDERED:**

1. That Defendant Magellan's Motion to Transfer (Doc. 19) is **granted**; and
2. That the Clerk of Court shall transfer this matter to the United States District Court for the Eastern District of New York and terminate this case in the District of Arizona.

Dated this 22nd day of September, 2021.

Honorable Steven P. Logan
United States District Judge

---

[4] This Court declines to exercise the "first-to-file" rule that Zurich argues for in the Response. *See, e.g.*, *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary . . . [D]istrict court judges can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity."); *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F.Supp.2d 1289, 1293 (N.D. Cal. 2013) (citations omitted) ("A court may, in its discretion, decline to apply the first-to-file rule in the interests of equity or where the Section 1404(a) balance of convenience weighs in favor of the later-filed action.").